Good morning, Your Honors. May it please the Court, William W. Palmer on behalf of Plaintiffs and Appellants. At the outset, I'd like to reserve some time to respond. How many time minutes? Three minutes. All right. This is a parallel case to one already decided by the Court. The judges who decided it were Judge Kleinfeld, Judge Beeser, and Judge Cahay. The case was Taylor v. Wesley, 402, Fed 3rd, 924. In that case, the Court unanimously addressed the application of the 11th Amendment to the facts and principles of this case. In its published unanimous decision, the Court noted the following. The Comptroller knowingly violates both his statutory requirements and the constitutional requirements imposed by the 14th Amendment. As a result, the Comptroller's conduct of seizing property that is not subject to seizure and taking that property into custody without mandatory notice is ultra-virus. Therefore, the 11th Amendment does not apply to that conduct. Counsel, I guess that the only issue that I'm particularly interested in is whether you can get past interest and whether you can get attorney's fees, because I think the other point is clearly established by Taylor. Yes, Your Honor. I think the answer to your first question on interest, what you're referring to is the fact that the State has retroactively applied a change in the interest rates law backwards across the custodial accounts. Interestingly enough, the Comptroller made that same argument in Wesley v. U.S. Bank Corp., 114 Cal. App. 4, 577 at page 581 and 582. In fact, the attorney who made that argument, that laws are to be applied prospectively, not retroactively, is none other than one of the defendants in this case who has applied the law retroactively against the interest rate law, and that's Defendant Shavaro. The second question on attorney's fees But, pardon me, I haven't had a chance to read that since you cited it. Tell me about the case. Tell me what your position is as to interest. Are you entitled to interest against the fund or not? Yes, we are, Your Honor. Against the general funds of the State of California? No, against the money that is accruing on the private funds that are held in trust for the individuals. If there is interest accruing, it's accruing to the benefit of the Comptroller, because the Comptroller has liquidated the asset, put it in the UPF fund, and the Comptroller wants to keep that, right? Yes, and that's a classic unconstitutional taking of property. Well, it's only unconstitutional if the asset was accruing interest before it was liquidated and would be accruing interest now if proper custodianship had been applied to it. But let me take the case of a cash account, a checking account that has no interest, that still exists. And let's suppose that that is put at its cheats, not permanently, but provisionally it's cheats, all right? It's not accruing any interest to the person who had it in the bank. Now, the Comptroller, as a good servant, starts getting interest. Why should that good interest go to you? If I could refer to the law, Your Honor, on that, on the hypothetical. That's the State law, right? Yes. The State set out a prescribed interest rate, a statutory interest rate. Let's take your hypothetical cash account. It is cheats to the State of California under the unclaimed property law. It was to receive a specific rate of interest while it's in use. All right. That's a State law claim, is it not? Your Honor, that's a vested right that applies to that property. The State of California has said that the property that is in its custody will receive this rate of interest. So within that, it's as though you have a bank account, and it's receiving a rate of interest, and the bank suddenly says, well, now we're going to apply a zero interest, and we're going to apply it backwards. In my hypothetical, let me make it clear. Yes, Your Honor. The asset is a bank account which does not receive any interest when in the hands of the owner. Got that? Now, it's just cheated. It goes to Mr. Wesley, the controller. Mr. Wesley, a good and fruitful public servant, puts it to work. He starts getting interest on it. Where is the vested right that's been defeased from the person who was perfectly happy to have a cash account with no money being earned? Well, again, referring to the unclaimed property law, Your Honor. Because it's based on the unclaimed property law, a State law which applies in State claims, right? But not in Federal claims. I respectfully disagree. Where is the case that tells me that there is a Federal right to get interest from the controller, right, when I wasn't getting interest before the controller took the money? The unclaimed property law that we're looking at makes no distinction between these types of property, Your Honor. It says that you will receive the interest. Let's say that. Yes, sir. Where is the Federal right? Where is the case that says there's a Federal right to get interest when it's taken into the custody of the controller? If you give me an opportunity, Your Honor, I will get some cases for you. I just briefed this issue for summary judgment about a week ago. There are Supreme Court cases on point that say that when a State promises someone a rate of interest, that's a vested right. It follows the corpus. In this case, you're hypothetical. The person is promised under the State laws that they will receive a specified rate of interest. And in fact, the State then pays out that rate of interest. That's applied prospectively. Now, what the State has done is they've come in, they've declared we will pay zero interest, which is fine going forward with your analogy, on all property, irrespective of source. But now they've taken the zero interest rate and they've applied it retroactively against all property. Respectfully, Your Honor, you took a simple example of a bank account that earns no interest. What if I was to take Mr. Bongetus' stock that was sold and in which he was earning far more than interest and had all kinds of other rights? The reasonable value of the dividends that he lost, right, would be an item of damage to be claimed. But that would be against State funds, would it? Respectfully, Your Honor, if somebody is applying for the reasonable value of their assets, keep in mind the State official is determining what they're going to pay out. There are no guidelines. There are no regulations. I disagree with you. It may be unjust, arbitrary, unconscionable, and something we don't like, right? But I'm just trying to find out where the Federal right is involved. I mean, if you take a look at Taylor, Judge Kleinfeld is very clear. He's saying you get the asset back because the asset hasn't become the property of the State. There's no question about that. If you would like, Your Honor, I can give you the Federal cases that say that. I need to save a little bit of time to respond to the other side. Okay? Thank you. Thank you. Good morning. Robin Johansson on behalf of the State Comptroller and the other individual defendants. Beginning with your question, Judge Fletcher, the interest question is, in our view, very much retrospective relief under the Eleventh Amendment. Interest is compensatory for the value of the time, if you will, of holding the asset. And what is compensatory is retrospective and barred by the Eleventh Amendment. Now, there have been statutes which have changed from time to time requiring the State to pay interest at certain rates. Is that correct? Yes, Your Honor, there were. And the current statute says that interest shall not be paid. That's right. But if interest were allowable on these accounts, you'd go back and see for an account which, say, had been there for ten years, you would, under the requirements of the State law, if it were to be applied, you would maybe get interest for five years and then not get it, something like that, into the future. Now, does the right become vested by virtue of State law? No, Your Honor. There's no Federal vested right to interest. What we have here is like Pennhurst, where the plaintiffs are asking the Federal Court then to enjoin State officials for a violation of a State law as they read it. But there's just no Federal right to that, to interest at that time. What we have is a clear State law that very clearly says that interest shall not be paid on any account after the effective date of the statute. You're not saying that Mr. Palmer can't bring a State claim on the Board of Control and all that, right? Absolutely. Mr. Palmer can easily bring a State claim and, in fact, there are class actions on behalf of plaintiffs whom Mr. Palmer is currently representing that raise this very issue. I would like to, on the attorney's fees, Your Honor, I have to say under Section 1988, those are generally not viewed as barred by the Eleventh Amendment. That was my view of it. They certainly get the attorney's fees. That's right, even though they do come from the State treasury. This case is different from Taylor in some very important ways, most importantly because these plaintiffs were given an opportunity to amend, to state very specific claims of harm, and they failed to do that. This is not Taylor in the sense that the Court's decision in Taylor says that this is a claim for the return of property. Most of these plaintiffs have never alleged that the controller is holding their property and refuses to give it back. And they were given an opportunity to allege that, and they did not. So that when one looks at the First Amended Complaint and at Judge Seaborg's decision, you have to say this is a different situation from the one that was at issue in Taylor. Are you saying they didn't claim that it was their property that the State was holding? That's correct, Your Honor. Pardon me. I'm reading from Paragraph 65. Yes, but when one looks at the specific claims that these individual plaintiffs made, they don't claim that the controller has their property and is refusing to give it back. And that is different. So that when one looks at the harm that they are alleged to have done to the State, there is no adequate pleading of injury sufficient to entitle them to prospective relief. And that's a very important difference. Should we then send it back and allow them to amend? Well, they've been given an opportunity to amend once already, Your Honor, and they did. And Judge Seaborg found that they had not met the burden of adequately amending. So in my view, you know, if they can't. Before Taylor came down? That's correct. That's correct. So that, you know, if they could amend to say that the controller was holding their property and refused to give it back, one would think they would have done that whether or not Taylor had been decided. And those amendments have not been made. So that is, I think, a very important difference between this case and Taylor. The other issues that I would like to say, you know, the great similarity and the point that is, of course, decided by Taylor in this case, is that compensatory damages are not available. No matter what you call them, whether it's restitution or whatever, that is compensatory damage that is going to have to come out of the state treasury. And Taylor is governing law. Have you any authority that these are not, that it's not a federal right to have the state obey the law? I'm sorry, Your Honor, when you mean authority? Well, in a 1983 action, for example, it's a violation of 1983 for the individuals to be violating state law, if that's a fact. Your Honor, I would, yes, I do have authority, and that's the Pennhurst case. The Pennhurst case very clearly holds that the Eleventh Amendment bars and exonerates in any action, even for prospective relief against state officials, if the claim is merely to make them obey state law. So that's the holding of Pennhurst. But, Ms. Johansen, you surprised me by saying that there's no allegation that these people want their property back. So I've been reading what you've been talking. Page 39, line 25. Defendants have violated their obligations and duties under the, this is declaratory relief, under the above laws such that plaintiffs and class are entitled to disgorgement and return of either their property or the return of reasonable value thereof. Isn't that a claim to get the property back just the way the TWA hostess and just the way the Intel General Counsel wanted to get their property back in Taylor? Your Honor, the disgorgement and return, and I'm looking at page 39. I'm sorry, which? Line 26. Line 26. First Amendment class action complaint. If one looks at the, at the specific allegations that these. No. The allegations are a mishmash of evidentiary and irrelevant matters stipulated. Thank you. Apologies to Mr. Palmer. But the fact of the matter is they're trying to get their property back or the reasonable value. And the reasonable value, they may be wrong. They may not have a claim for that. That may be compensation. That may go against State funds. It's outside of Taylor, et cetera. But there's the allegation that they want disgorgement and return of their property. All the claims are that this is in the unclaimed property fund, not that it's been permanently achieved. Correct? I'm just, I have to respectfully disagree with the Court.  Well, Your Honor, I have to say, as the Court pointed out, this is a very extensive complaint. When one looks at the specific allegations, the allegations are that the State has taken a car that's badly parked and put it in a lot. It doesn't become the State's property. They've got to give the car back with a fine. But they've got to give the car back. Right. And that's what these folks are saying. They want their property back. They want disgorgement. Well, Your Honor, I have to say, as the Court pointed out, this is a very extensive complaint. When one looks at the specific allegations that pertain to each of these individuals, they don't say what of their property is being held by the controller and the controller refuses to give it back. They don't say that they have made a claim for their property and that the controller has refused that claim. Not one of them says that. It would be a ground to say that they have an exhaustive ministry of remedies. Correct. You can try that one on summary judgment. Right. But as far as the complaint is concerned, they're asking for their property back, aren't they? Perhaps not as arduously as you might like. But they're not saying what their property is, is my point, Your Honor. They're saying defendants and this entire class want their property back. But the individual. You would agree that a detailing of each piece of property that has been taken by the controller might be evidentiary and superfluous in pleadings, right? That could certainly be discovered. Pardon me? That could easily be discovered. This is notice pleading still. Yes, I agree, Your Honor. And frankly, sometimes when one gets a complaint like this, it's too much and it's impossible to be able to sort out what the complaint really is. And I believe that was Judge Seaborg's point here with respect to the defendants. Thank you. Briefly responding, Your Honor, as to the interest issue. Again, we're dealing not with government funds. We're dealing with a custodial private fund of money, a private pool of money that is under the custody or trust of the state official. That was another one of Judge Kleinfeld's key points when discussing the Eleventh Amendment issue. Secondly, I can get the site for the Illinois Supreme Court that discusses this same issue to you. I don't have it with me. It relied on the Webb case, which is a U.S. Supreme Court case. The Illinois Supreme Court discussed this very issue of taking interest out of the unclaimed property fund and found that it was a violation of the Fifth and Fourteenth Amendment and it provided all the U.S. Supreme Court authority. I didn't bring that site. I didn't bring it with me, Your Honor. You can give it to us later. Okay. Secondly, there's a little bit of confusion that seems to have crept in here on the Taylor v. Seaver decisions. The Taylor decision was decided by the Eastern District Court. What the Comptroller simply did was come in front of Commissioner Mitchell and said, this issue has been decided by the Eastern District and Taylor. Here's the decision. Commissioner Mitchell looked at that decision. He essentially followed the reasoning of the Eastern District Court. There wasn't an in-depth analysis of this complaint. Secondly, the Ex Parte Young, application of Ex Parte Young, as Judge Kleinfeld noted in his decision in Taylor, can be applied prospectively to stop the taking of property in the future. And finally, I'd add that all these people are also asking for an accounting to make sure some of them did not receive what they believe they're entitled to. That's it. Thank you, Your Honor. All right. The case will be submitted.
judges: B. Fletcher, Hawkins, Bea